**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| CONSTRUCTION AND DESIGN COMPANY, MYROSLAV POSATSKYY, and JAN OZLANSKI, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) CASE NO.: 07-CV-1322 ) |
| BUREAU OF CITIZENSHIP and IMMIGRATION SERVICES, | ) ) ) ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Construction and Design Company, Myroslav Posatskyy, and Jan Ozlanski filed suit against the United States Bureau of Citizenship and Immigration Services ("BCIS") under the Administrative Procedure Act, 5 U.S.C. § 706, seeking to overturn BCIS's decision to deny Construction and Design Company's petition for a visa for its employee, Myroslav Posatskyy, and BCIS's decision to deny R.G. Construction's petition for a visa for its former employee, Jan Ozlanski.[1] This matter is before the Court on cross motions for summary judgment, filed by Plaintiffs on September 6, 2007 [22] and by Defendant on November 15, 2007 [28]. For the following reasons, the Court denies Plaintiffs' motion and grants Defendant's cross motion.

**I.   Background**

Plaintiffs, a local construction company and two construction employees seeking permanent residence, filed this lawsuit claiming that visa petitions filed on behalf of the two employees were

---

[1] R.G. Construction is not a party to this action. According to records from the Illinois Secretary of State, R.G. Construction Company was dissolved as a corporation as of October 2005.

improperly denied by BCIS. Construction and Design Company ("CDC") sought to employ Myroslav Posatskyy as a finish carpenter, and R.G. Construction Company ("RG") sought to employ Jan Ozlanski as a custom woodworker. Both companies classified the employees as "skilled workers" for which qualified workers are not available in the United States. 8 U.S.C. § 1153(b)(3)(A)(I). The visa petition process for skilled workers involves a number of steps. The Immigration and Nationality Act, 8 U.S.C. § 1182(a)(5), forbids an alien from entering the United States "for the purpose of performing skilled or unskilled labor" unless the Department of Labor certifies that there is a shortage of American workers able and willing to perform the labor in question and that employing an alien to perform such labor will not harm American workers. Thus, a petitioning employer must obtain certification from the Department of Labor establishing that the employment of the alien will not adversely affect similarly employed American workers. 8 U.S.C. § 1182(a)(5)(A).

Once the certification has been obtained, the employer must file a visa petition on behalf of the employee with BCIS. In order to secure BCIS's approval of the visa petition, the employer must establish that it has the continuing ability to pay the beneficiary the proffered wage beginning on the priority date of the visa petition. The regulation at 8 C.F.R. § 204.5(g)(2) states:

> Ability of prospective employer to pay wage. Any petition filed by or for an employment-based immigrant which requires an offer of employment must be accompanied by evidence that the prospective United States employer has the ability to pay the proffered wage. The petitioner must demonstrate this ability at the time the priority date is established and continuing until the beneficiary obtains lawful permanent residence. Evidence of this ability shall be either in the form of copies of annual reports, federal tax returns, or audited financial statements. In a case where the prospective United States employer employs 100 or more workers, the director may accept a statement from a financial officer of the organization which establishes the prospective employer's ability to pay the proffered wage. In appropriate cases, additional evidence, such as profit/loss statements, bank account records, or personnel records, may be submitted by the petitioner or requested by the Service.

BCIS denied the visa applications of Jan Ozlanski and Myroslav Posatskyy because it determined that R.G. Construction and CDC did not have the continuing ability to pay Ozlanski and Posatskyy the proffered wage beginning on the priority dates of the visa petitions.

### A. Jan Ozlanski

Jan Ozlanski is a citizen of Poland and a custom woodworker. On March 23, 2001, R.G. Construction Company, Ozlanski's former employer, filed a labor certification application on his behalf with the Department of Labor. The rate of pay shown on the application was $28.00/hour. The Department of Labor approved Ozlanski's labor certification on December 19, 2002.

R.G. Construction then filed a visa petition on March 13, 2003. According to the petition, R.G. Construction was established in 1984, had a gross annual income of $530,227, and employed twelve workers. Ozlanski's proffered wage once again was $28.00/hour (which amounts to $58,240 per year based on a forty-hour work week over fifty-two weeks). In support of its obligation to demonstrate a continuing ability to pay Ozlanski the proffered wage beginning on March 23, 2001 (the priority date of the visa petition), R.G. Construction submitted an incomplete copy of its S Corporation tax return for 2001, which showed a net income of $13,131. On October 2, 2003, the Director of the Nebraska Service Center for BCIS requested additional evidence on R.G. Construction's ability to pay the proffered wage, specifically, a copy of R.G. Construction's last quarterly federal tax return and copies of Ozlanski's W-2s for 2001 and 2002. On December 23, 2003, RG Construction submitted its complete 2002 federal income tax return and its most recent quarterly federal tax return.

On March 11, 2004, the Director of the Nebraska Service Center for BCIS denied the visa petition filed on behalf of Ozlanski, finding that R.G. Construction did not establish "the ability to

pay the proffered wage at the time the priority date was established and continuing to the present."
AR at 40. R.G. Construction appealed the denial of the visa petition to the Administrative Appeals Office (AAO). R.G. Construction's primary argument on appeal was that it had filed visa petitions in the past on behalf of other employees and those petitions had been approved. It also argued that the regulations do not require a petitioner to actually pay the proffered wage but only demonstrate an ability to pay the employee's salary.

On appeal, the AAO concluded that neither R.G. Construction's 2001 net income ($13,131), nor net current assets ($2,346), were sufficient to pay Ozlanski's wage, and, similarly, that neither R.G. Construction's 2002 net income ($5,054), nor net current assets ($6,778), were enough to demonstrate that R.G. had the continuing financial ability to pay Ozlanski beginning on the priority date.

### B. Myroslav Posatskyy

Myroslav Posatskyy is a citizen of Ukraine and a finish carpenter. On April 19, 2001, CDC, Posatskyy's employer, filed a labor certification application on his behalf with the Department of Labor. The rate of pay shown on the application was $25.10/hour. The Department of Labor approved Ozlanski's labor certification on May 1, 2003.

CDC then filed a skilled worker visa petition on June 13, 2003. According to the petition, CDC was established in 1999, had a gross annual income of over $500,000, and employed three workers. Posatskyy's proffered wage once again was $25.10/hour (which amounts to $52,208 per year). In support of its obligation to demonstrate a continuing ability to pay Posatskyy the proffered wage beginning on April 19, 2001 (the priority date of the visa petition), CDC submitted copies of its corporate tax returns for 2000, 2001, and 2002. CDC's tax records indicated it had a net income

of -$2,526 in 2000, $11,230 in 2001, and $11,434 in 2002. On October 9, 2003, the Director of the Nebraska Service Center for BCIS requested additional evidence of CDC's ability to pay the proffered wage. On December 23, 2003, CDC submitted its additional evidence – specifically, additional copies of CDC's federal tax returns for 2001 and 2002; a document entitled "Profits and Losses" from January 1, 2003, to May 1, 2003; deeds of ownership for three distinct real estate properties in Illinois; Posatskyy's W-2 forms; and copies of checks paid to Posatskyy.

On May 14, 2004, the Director of the Nebraska Service Center for BCIS denied the visa petition filed on behalf of Posatskyy, finding that CDC did not establish the ability to pay the proffered wage at the time the priority date was established and continuing until the beneficiary would obtain lawful permanent residence. AR at 121-23. CDC filed a motion to reopen the denial of the visa petition, which BCIS granted. However, on March 18, 2005, BCIS upheld the denial of the visa petition, for the same reasons as stated in the initial denial.

On April 18, 2005, CDC appealed the denial of the visa petition to the Administrative Appeals Office (AAO). CDC's primary argument on appeal was that the financial documents submitted in support of the petition clearly establish CDC's ability to pay Posatskyy's wage. On appeal, the AAO concluded that neither CDC's 2001 net income ($11,230), nor net current assets ($9,419), were sufficient to pay Posatskyy's wage, and, similarly, that neither CDC's 2002 net income (-$11,434), nor net current assets ($11,100), were enough to demonstrate that CDC had the continuing financial ability to pay Posatskyy beginning on the priority date.

## II. Analysis

Under the Administrative Procedure Act ("APA"), a court reviewing an administrative agency's decision decides relevant questions of law, interprets statutory provisions as necessary, and

5

may set aside agency actions, findings, and conclusions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. §§ 706; *Envtl. Law and Policy Ctr. v. U.S. Nuclear Regulatory Comm'n,* 470 F.3d 676, 682 (7th Cir. 2006); *Amglo Kemlite Labs., Inc. v. Bureau of Citizenship and Immigration Services*, 2008 WL 687223, *2 (N.D. Ill. March 10, 2008). An agency abuses its discretion when "there is no substantial evidence to support the agency decision, or when the agency has made its determination based on an improper understanding of the law." *River Street Donuts, LLC v. Chertoff*, 2007 WL 2259105, *2 (D. Mass. Aug. 3, 2007) (quoting *Augat, Inc. v. Tabor*, 719 F. Supp. 1158, 1160 (D. Mass. 1989)). The burden of proof rests on the visa applicant to establish that the beneficiary is eligible to receive a visa. See 8 U.S.C. 1361; see also *Amglo Kemlite Labs.*, 2008 WL 687223 at *3. BCIS enjoys broad discretion in deciding whether to grant or deny visa preference classifications. Even if a court might otherwise disagree with BCIS's decision, a court is forbidden from substituting its judgment for that of the agency if a rational basis exists for the agency's decision. *Louisiana Philharmonic Orchestra v. I.N.S.*, 2000 WL 282785, *2 (E.D. La. March 15, 2000).

### A. Standing

In its initial brief, Defendant argued that Plaintiffs lack standing to bring this lawsuit. However, in its reply brief, Defendant concedes that it "no longer contend[s] that the plaintiffs lack standing to bring this lawsuit." Def. Reply at 2 (citing *Ghaly v. I.N.S*, 48 F.3d 1426, 1434 (7th Cir. 1995)). Section 10 of the APA, 5 U.S.C. § 702, gives any person "suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute" the right to seek federal court review of the agency action. See also *Taneja v. Smith,* 795

F.2d 355, 358 n.7 (4th Cir. 1986); *Stenographic Machs., Inc. v. Reg'l Adm'r for Employment and Training,* 577 F.2d 521, 527-28 (7th Cir.1978); *Sanchez-Trujillo v. INS,* 620 F.Supp. 1361, 1363 (W.D.N.C.1985) (noting that "[t]he immigrant beneficiary is more than just a mere onlooker; it is [his] own status that is at stake when the agency takes action on a preference classification petition"). All three Plaintiffs clearly will be affected by this Court's decision. Therefore, the Court concludes that Plaintiffs have standing to bring this action.

### B. Inconsistent Rulings

Although an agency is not necessarily bound by its prior decisions, "[a]n agency must either conform to its prior precedent or explain its reasoning for departure from that precedent." *Laclede Gas Co. v. Fed. Energy Regulatory Comm'n,* 722 F.2d 272, 275 (5th Cir. 1984); see also *Blankenship and Assocs., Inc. v. N.L.R.B.*, 999 F.2d 248, 251-52 (7th Cir. 1993); *Louisiana Philharmonic Orchestra v. I.N.S.*, 2000 WL 282785, *2 (E.D. La. March 15, 2000), aff'd, 248 F.3d 1139 (5th Cir. 2001). Plaintiffs argue that BCIS abused its discretion because it issued inconsistent decisions concerning similar petitioners. Plaintiffs contend that BCIS previously approved visa petitions submitted by CDC and R.G. Construction on behalf of other aliens, impliedly finding that CDC and R.G. Construction had the ability to pay the prevailing wage for all employees.

During the administrative appeals of Ozlanski's and Posatskyy's petitions, the AAO considered the argument, made by Plaintiffs' counsel, that approvals issued in other immigrant petitions submitted by the same petitioner dictate a similar result in future cases. In response, the AAO explained that its decisions concerning these applications were not controlled by earlier decisions concerning similar petitions before the service centers. In Ozlanski's case, the AAO reasoned as follows:

7

> If a petitioner submits multiple petitions for alien workers using the same or similar priority dates, as reflected on the individual labor certifications, a petitioner must show that it had sufficient income to pay *all* the wages at the priority date(s). The AAO is not required to approve applications or petitions where eligibility has not been demonstrated, merely because of prior approvals that may or may not have been erroneous.

AR at 75 (emphasis added). In Posatskyy's case, the AAO applied the following logic:

> With regard to the previous approval, the record does not contain the materials submitted in that petition. However, if the circumstances of the other petition are similar to those of the instant petition, the other petition would have been approved in error. The AAO is not required to approve applications or petitions where eligibility has not been demonstrated, merely because of prior approvals that may have been erroneous. It would also be absurd to suggest that [BCIS] or any agency must treat acknowledged errors as binding precedent.

AR at 172. The AAO also compared the AAO's relationship to service centers to that of a court of appeals and a district court and noted that even if a service center had approved the petitioner's immigrant petition on behalf of another beneficiary, the AAO would not be bound to follow the contradictory decision of a service center. *Id.*

In support of their argument that approvals issued in prior immigrant petitions dictate a similar result in these cases, Plaintiffs submitted Notice of Action forms indicating that prior petitions had been granted. However, Plaintiffs did not submit any of the financial information that they used to support the approved petitions. Because Plaintiffs did not submit supporting evidence for their position (to this Court or to the AAO), the record is incomplete with respect to this argument, and the Court can only speculate as to CDC's and R.G. Construction's financial viability at the time that those prior petitions were granted. See *Portillo v. I.N.S.*, 1999 WL 193938, *4 (10th Cir. April 8, 1999) (noting that record was not sufficiently complete to determine whether application at issue was identical to previously approved applications).

8

Even if, for the sake of argument, the Court were to assume that, because of the proximity of the priority dates, the financial information presented on behalf of other CDC and R.G. Construction applicants was similar to that presented on behalf of Ozlanski and Posatskyy, Plaintiffs' petitions on behalf of Ozlanski and Posatskyy nonetheless were for two additional employees working for two small employers. As far as the Court can discern from the record, the petitions were not seeking approval for replacements for previously approved employees. Furthermore, as set forth in more detail in the section discussing CDC and R.G. Construction's financial viability, the AAO issued thorough opinions explaining its analysis of CDC and R.G. Construction's financial condition while also addressing the seemingly adverse decisions. The fact that BCIS approved separate petitions for other CDC and R.G. Construction employees does not mean that all consequent petitions must be approved. Plaintiffs interpret the most recent denials as conflicting with prior approvals. However, each visa petition must be viewed on its own merits. A small business like CDC or R.G. Construction may be able to meet its burden of proof with respect to one or two employees but unable to do so for any additional employees. As explained by the AAO, if a petitioner submits multiple petitions for alien workers using similar priority dates, a petitioner must show that it had sufficient income to pay *all* the wages at the priority dates. It seems prudent, and certainly not an abuse of discretion, for BCIS and the AAO to assess each application on its own, rather than rubber-stamping applications merely because of prior approvals.

### C. Plaintiffs' Financial Viability

Plaintiffs also argue that BCIS erred when it determined that CDC's and R.G. Construction's ability to pay the proffered wage should be based on net income. Plaintiffs contend that BCIS should determine the ability to pay the proffered wage based upon gross income.

9

Under the regulation at issue here, 8 C.F.R. § 204.5(g)(2), evidence of an employer's ability to pay the proffered wage "shall be either in the form of copies of annual reports, federal tax returns, or audited financial statements." 8 C.F.R. § 204.5(g)(2). Relying on income tax returns to determine ability to pay is "well-established" by both BCIS and judicial precedent. *Elatos Rest. Corp. v. Sava,* 632 F. Supp. 1049, 1054 (S.D.N.Y. 1986) (citing *Tongatapu Woodcraft Hawaii, Ltd. v. Feldman,* 736 F.2d 1305 (9th Cir.1984)); *In re Sonegawa*, 12 I. & N. Dec. 612 (A.R.C. 1967). In considering evidence of a prospective employer's financial viability, BCIS "may reasonably rely on net taxable income as reported on the employer's return." *Elatos,* 632 F. Supp. at 1054.

Plaintiffs' argument that BCIS should have relied on the employers' gross income, as opposed to net income, was rejected by the court in *K.C.P. Food Co., Inc. v. Sava*, 623 F. Supp. 1080, 1084 (D.C.N.Y. 1985). The *K.C.P. Food* court, relying on precedent from this jurisdiction, affirmed the district director's use of the employer's corporate income tax return, which reflected net income, in determining the employer's ability to pay the offered wage:

> Plaintiff * * * was on notice that its *net* income had to reflect its ability to pay the offered wage. [The court's decision in] *Ubeda v. Palmer,* 539 F. Supp. 647 (N.D. Ill. 1982), *aff'd mem.,* 703 F.2d 571 (7th Cir.1983), is relevant to this issue. Petitioner in *Ubeda* sought sixth preference immigration classification status based on the beneficiary's ability to work as a governess. The proffered wage was $6,000 per year. The gross annual income revealed by petitioner's tax returns was slightly more than $20,000. His net taxable income was approximately $13,000. From this income the petitioner supported a wife and five children. Although petitioner obtained a labor certificate pursuant to 8 U.S.C. § 1182(a)(14), the District Director, upheld by the district court, denied the petition on the basis that petitioner had failed to sustain his burden of proving the ability to pay the wage offered. *Id.* at 650.

*K.C.P. Food*, 623 F. Supp. at 1084 (emphasis in original).

The results in both *K.C.P Foods* and *Ubeda* demonstrate that it was reasonable for BCIS to rely upon net income in assessing the visa applications of Ozlanski and Posatskyy. See also *Elatos,*

10

632 F. Supp. at 1053-54. With respect to the application filed on behalf of Ozlanski, the AAO concluded that neither R.G. Construction's 2001 net income ($13,131), nor net current assets ($2,346), were sufficient to pay Ozlanski's wage, and, similarly, that neither R.G. Construction's 2002 net income ($5,054), nor net current assets ($6,778), were enough to demonstrate that R.G. had the continuing financial ability to pay Ozlanski anything close to his proffered yearly salary of $58,240 beginning on the priority date. The AAO's use of net income (taken from the federal tax returns) as a determinative factor was proper under federal case law.

As to the application filed on behalf of Posatskyy, the AAO's opinion was even more detailed. In a twelve page opinion, the AAO concluded that neither CDC's 2001 net income ($11,230), nor net current assets ($9,419), were sufficient to pay Posatskyy's yearly wage ($52,208), and, similarly, that neither CDC's 2002 net income (-$11,434), nor net current assets ($11,100), were enough to demonstrate that CDC had the continuing financial ability to pay Posatskyy beginning on the priority date. The AAO also considered all the arguments of counsel – largely the same as presented to this Court – as well as the additional evidence submitted by CDC before concluding that CDC had not met its burden.

Plaintiffs have not demonstrated that BCIS abused its discretion in denying the visa applications filed on behalf of Ozlanski and Posatskyy. The AAO's opinions reviewing the director's decisions demonstrate that the AAO considered all of the evidence presented by CDC and R.G. Construction and set forth rational reasons for denying the applications. Plaintiffs had the burden of establishing that they had the financial means to pay the required wage, and, based on the AAO's opinions, the Court finds that they have not satisfied this burden.

### III. Conclusion

For the reasons stated above, the Court grants Defendant BCIS's motion for summary judgment [28], denies Plaintiffs Construction and Design Company's, Myroslav Posatskyy's, and Jan Ozlanski's motion for summary judgment [22], and terminates this case.

Dated: May 14, 2008      _____
                                                        Robert M. Dow, Jr.
                                                        United States District Judge